# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HOUSE OF BRIDES, INC., HOUSE OF BRIDES WORLD'S LARGEST ONLINE WEDDING STORE, INC., HOB HOLDING CORPORATION, and HOB I HOLDING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 07834 |
| ALFRED ANGELO, INC., | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs, House of Brides, Inc., House of Brides World's Largest Online Wedding Store, Inc., HOB Holding Corporation, and HOB I Holding Corporation (collectively, "House of Brides"), filed suit against the defendant, Alfred Angelo, Inc. ("Alfred Angelo" or "AA"), alleging a variety of claims. After four of its claims were dismissed without prejudice for failure to state a claim, House of Brides filed a Second Amended Complaint ("SAC") which attempted to revive the four dismissed claims for antitrust violations and tortious interference with business expectancy and asserted two new claims for another antitrust violation and tortious interference with contract. Alfred Angelo has moved to dismiss the restated claims (Counts IV, VI, VII, and IX), as well as the new claims (Counts V and VIII), pursuant to Rule 12(b)(6).[1] For the reasons that follow, the motion is granted.

---

[1] In addition to the claims that are the subject of Alfred Angelo's motion, House of Brides asserts claims for breach of contract (Count I), breach of warranty (Count II), and declaratory judgment (Count III).

1

I. **Background**

Alfred Angelo is a corporation that manufactures and distributes wedding dresses, including bridal gowns and bridesmaid dresses.[2] House of Brides sells wedding products, primarily bridal gowns and bridesmaid dresses, both at retail store locations and over the Internet. Since 2002, House of Brides has become a "premier online retailer of wedding products." SAC, ¶ 42. House of Brides was among the first such companies to publish retail prices for its products online, allowing consumers to comparison shop. House of Brides also offers weddings products at prices substantially below prices charged by "most, if not all of, [its] competitors." *Id.* ¶ 44. For more than forty years, House of Brides was an authorized dealer of Alfred Angelo products. Alfred Angelo wedding products became one of the best-selling and most profitable lines sold by House of Brides, and House of Brides became Alfred Angelo's top retailer in the United States. The majority of House of Brides sales transactions for Alfred Angelo products took place online.

As an authorized dealer, House of Brides purchased Alfred Angelo products via special order and purchased a required minimum stock twice a year. On numerous occasions, Alfred Angelo failed to meet a date specified for delivery in the purchase order and the affected customers refused to accept the dress, causing House of Brides to lose the sale. On other occasions, the delay damaged the relationship between House of Brides and its customers. Additionally, Alfred Angelo shipped duplicate, incorrect, or defective orders to House of Brides, forcing House of Brides to pay for dresses that had not been ordered by a customer. According to

---

[2] The facts stated in the SAC are accepted as true for the purposes of this motion. *See Navarro v. Neal*, 716 F.3d 425, 429 (7th Cir. 2013). Those factual allegations are essentially identical to those that were relayed in this Court's decision on the prior motion to dismiss, as the plaintiffs chose to largely replead the same information. The Court therefore assumes familiarity with its prior opinion, briefly summarizes the facts here, and will discuss the handful of new factual allegations in addressing the parties' respective arguments.

House of Brides, certain dresses that Alfred Angelo supplied "were not of fair or average quality" and would not pass in the trade under the contract description. *Id.* ¶ 26.

For many years, Alfred Angelo was "strictly a designer and manufacturer," but Alfred Angelo now also operates retail stores throughout the United States. *Id.* ¶ 50. Upon its expansion into operating retail stores, Alfred Angelo became a direct competitor of House of Brides.

On January 1, 2004, Alfred Angelo announced marketing policies, including a mandatory minimum retail pricing policy. Alfred Angelo's mandatory minimum retail pricing policy solicited agreement from retailers not to discount Alfred Angelo products below the policy's minimum prices and threatened to terminate retailers who did not comply. House of Brides was not aware of Alfred Angelo's marketing policies until January 2007. On April 18, 2007, Alfred Angelo sent House of Brides a letter notifying it of the marketing policies that had been introduced in January 2004. At the same time, Alfred Angelo also notified House of Brides that failure to comply with the minimum retail pricing policies would result in termination of its status as an authorized Alfred Angelo dealer. House of Brides rejected Alfred Angelo's mandatory minimum prices, stating that other retailers were selling at discounted prices and that House of Brides needed to remain competitive. The Chief Financial Officer of Alfred Angelo reported receiving complaints from other customers of Alfred Angelo regarding the refusal of House of Brides "to abide by the minimum resale price." *Id.* ¶ 52. These complaints included threats to stop purchasing from Alfred Angelo unless House of Brides met the agreed minimum prices or until Alfred Angelo stopped supplying products to House of Brides.

Alfred Angelo implemented a new set of marketing policies on November 24, 2010. The 2010 policies set forth both a Manufacturer's Suggested Retail Price ("MSRP") and a Minimum Pricing Policy ("MPP"). The MSRP represented the expected retail price for online sales while

the MPP represented the minimum price for products sold at brick-and-mortar stores. House of Brides alleges that Alfred Angelo and its retail dealers deliberately established these policies to "unreasonably restrain prices." *Id.* ¶ 59. House of Brides also alleges that Alfred Angelo set its MSRP substantially higher than its MPP, thus preventing House of Brides from competing with retail stores. On December 20, 2010, Alfred Angelo solicited House of Brides via email for confirmation of its agreement to Alfred Angelo's new marketing policies. Once again, however, House of Brides informed Alfred Angelo that it would not agree to the policies. At that time, numerous other online distributors of Alfred Angelo products both advertised and sold Alfred Angelo products below the MSRP and MPP.

Alfred Angelo sent House of Brides another email on or about May 4, 2011, containing notification that Alfred Angelo would cease supplying House of Brides with dresses on April 30, 2011. House of Brides alleges that Alfred Angelo sent this termination letter due to pressure placed on it by competitors of House of Brides, including Alfred Angelo's own retail stores, demanding that Alfred Angelo compel House of Brides to comply with its minimum prices, or alternatively to discipline House of Brides and force it to sell at the policy's minimum price. At this time, however, even Alfred Angelo sold its own products below the 2010 MPP. According to House of Brides, Alfred Angelo was seeking to "enhance its own retail sales" at the expense of House of Brides; its policies were even designed to drive House of Brides out of business. *Id.* ¶ 65. After the May 2011 email request, House of Brides continued to discount Alfred Angelo products; Alfred Angelo then terminated its relationship with House of Brides on August 12, 2011.

As a result of this termination, House of Brides alleges that it was left with retail store samples of Alfred Angelo products that it had been required to purchase but on which it cannot

now take orders. House of Brides estimates that it has lost in excess of $285,000, including stock inventory, customer returns, duplicate orders, and customer cancellations. House of Brides claims that it was unable to fill existing orders or to enter into new contracts with individuals inquiring prospectively about Alfred Angelo products. Finally, House of Brides alleges that Alfred Angelo's conduct has resulted in artificially high prices for consumers and a lack of competition for Alfred Angelo products.

## II. Discussion

Alfred Angelo moves to dismiss House of Brides' claims of price fixing in violation of the Sherman Act (Count IV), boycott in violation of the Sherman Act (Count V), violation of the Robinson-Patman Act (Count VI), violation of the Illinois Antitrust Act (Count VII), tortious interference with contract (Count VIII), and tortious interference with business expectancy (Count IX). As previously noted, the allegations in the SAC are nearly identical to those in the prior complaint; consequently, the Court's analysis is substantially unchanged with respect to the restated claims. The new claims, moreover, rest on the same inadequate factual foundation and fail for largely the same reasons.

In lieu of attempting to materially supplement its factual allegations, House of Brides devotes much of its effort to arguing that *Twombly* and *Iqbal* imposed only a plausibility standard, not a probability standard. That much is true, but it fails to address the pleading deficiencies identified in the Court's prior opinion. To survive a motion to dismiss, a complaint must include enough factual detail to give the defendant fair notice of the claims and grounds upon which they rest, and the allegations must add up to a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007); *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013). To make out a claim that is

plausible, plaintiffs must allege enough factual matter, taken as true, to "raise a right to relief above the speculative level" and "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. In making this determination, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff, *Navarro*, 716 F.3d at 429, but does not accept as true legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 679. Formulaic recitation of the elements of a cause of action supported by conclusory statements will not suffice. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S at 555); *see also Tamburo v. Dworkin*, 601 F.3d 693, 699 (7th Cir. 2010) (affirming the dismissal of antitrust claims that were "pleaded in a wholly conclusory fashion" so as to "sweep in the entire gamut of federal antitrust violations"). Determining the plausibility of a complaint is a "context-specific task" that requires the Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### A. Count IV: Sherman Act Price Fixing

House of Brides alleges that Alfred Angelo's conduct constitutes a violation of § 1 of the Sherman Act, which prohibits "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Despite its expansive text, it is well-settled that § 1 of the Sherman Act proscribes only unreasonable restraints of trade. *See American Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189 (2010) ("[E]ven though, 'read literally,' § 1 would address 'the entire body of private contract,' that is not what the statute means."); *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("[P]laintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful."). House of Brides characterizes the minimum pricing policy as price fixing. To adequately allege a § 1 violation, a plaintiff must allege three elements: "(1) a contract, combination, or conspiracy; (2) a resultant

unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335, 338 n.4 (7th Cir. 2012) (alteration in original) (quoting *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993)) (internal quotation marks omitted). A relevant market includes both a geographic market and a product market. *See Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir. 2004); *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010); *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010).

At issue here is the product market. The Court previously found that House of Brides failed to allege facts that plausibly suggested that the Alfred Angelo brand constituted a cognizable product market. As the Court previously explained, the use or uses to which a product is put controls the boundaries of the relevant market. *See United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 395-96 (1956). A relevant product market is defined as the line of goods or services that are reasonably interchangeable in use for the same purposes. *Id.* at 395. This determination involves assessing whether the product is "unique" or has "close substitutes, as to which there are substantial cross-elasticities of demand." *Fishman v. Estate of Wirtz*, 807 F.2d 520, 531 (7th Cir. 1986); *see also Jacobs*, 626 F.3d at 1337-38 & n.13 ("The cross-elasticity of demand measures the change in the quantity demanded by consumers of one product relative to the change in price of another."). After considering the contexts in which single-brand product markets have passed muster (and those in which they have not), the Court concluded that House of Brides' "conclusory allegations, resting on House of Brides' assertions that Alfred Angelo products are so 'unique' and 'highly differentiated' as to render other brands unsuitable substitutes, fall short of plausibly drawing the boundaries of the relevant product market around a single brand." No matter how distinctive the work of a wedding dress designer may be, House

of Brides' unsupported contention that there are no adequate substitutes for Alfred Angelo bridal gowns is implausible, to say the least. The argument implies that prospective brides who prefer Alfred Angelo designs would opt to pull an existing dress out of their closets rather than buy a gown from another designer; not surprisingly, House of Brides offers no factual allegations to support that suggestion. Given the importance of the occasion, even a bride with her heart set on an Alfred Angelo gown seems quite unlikely to prefer no wedding gown to one from another designer; in technical (if unromantic) terms, then, the cross-elasticity of demand for wedding gowns would seem to be high (and the case for defining the relevant product market by a single brand correspondingly low).

At least that is the case based on the dearth of factual allegations set forth in the SAC, which added nothing to the allegations that this Court held to be implausible in dismissing the prior claim. *See* Mem., Dkt. 62, at 5 (identifying the only two additions to the allegations regarding product market in the SAC). Instead, House of Brides argues that this question demands a "highly fact-based analysis that generally requires discovery." *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001). That market definition is often, or even usually, a fact-intensive exercise, however, says nothing about whether the plaintiffs' allegations of a single brand market in this case warrant further discovery—as *Savannah College* itself demonstrates. There, the Court of Appeals affirmed the district court's dismissal of antitrust allegations because the counter-plaintiff "did not provide a sufficient factual predicate to support its allegations that the [counter-defendant] enjoy[ed] market power in the [relevant] market." *Id.*

The argument that House of Brides needs discovery to allege facts sufficient to make its claim plausible effectively concedes that, even as amended in the SAC, its claim is not plausible.

"Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719-20 (6th Cir. 2003) (quoting *Tanaka v. Univ. of S. Calif.*, 252 F.3d 1059, 1063 (9th Cir. 2001)) (internal quotation marks omitted); *see also Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *4 (N.D. Ill. Aug. 29, 2013) (citing *Tanaka*, 252 F.3d at 1063-64). "While the pleading standard under the federal rules is very liberal, 'the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome.'" *Savannah Coll.*, 244 F.3d at 530 (citation omitted) (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)). House of Brides cites no authority for the proposition that the need for discovery excuses the failure to plead a plausible claim—nor can it, in view of the fact that *Twombly* was itself an antitrust case and its ruling was heavily influenced by the need to avoid subjecting antitrust defendants to costly and burdensome discovery where a complaint fails to allege facts sufficient to provide any "reasonably founded hope that the [discovery] process will reveal relevant evidence" to support a § 1 claim. 550 U.S. at 559-60 (alteration in original) (internal quotation marks omitted).

House of Brides' contention that it needs discovery in order to flesh out its allegations concerning the product market is particularly unpersuasive given its long relationship with Alfred Angelo. House of Brides has included Alfred Angelo dresses in its inventory for more than forty years; if Alfred Angelo's clothing is sufficiently unique and differentiated to form a cognizable submarket, information to plausibly assert that claim should be readily available to House of Brides. This is not a case in which information necessary to state a claim lies within the exclusive province of an adverse party. *Compare, e.g.*, *Ibarolla v. Nutrex Research, Inc.*, No. 12

C 4848, 2013 WL 672508, at *5 (N.D. Ill. Feb. 25, 2013) (collecting cases explaining that the heightened pleading requirements for fraud claims are relaxed when the relevant facts are exclusively within the defendant's knowledge); *see also Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1567 (7th Cir. 1991) (noting that where the relevant facts are within the defendant's exclusive knowledge, antitrust complaints that "do not contain a welter of factual detail" about the nexus with interstate commerce may survive a motion to dismiss if they "set out a plausible theory" regarding nexus). Given House of Brides' tenure in the industry, its lengthy relationship with Alfred Angelo, the dearth of factual allegations set forth in its third attempt to state a Sherman Act claim predicated upon Alfred Angelo's pricing policies, and the facial implausibility of that claim, it is reasonable to conclude that any further effort to amend this claim would be futile. Accordingly, Count IV is dismissed with prejudice.

### B. Count V: Sherman Act Boycott

In the SAC, House of Brides asserts a new antitrust claim for boycott in violation of § 1 of the Sherman Act. In support of this claim, it alleges that Alfred Angelo boycotted House of Brides by refusing to sell its products to House of Brides based on House of Brides' failure to abide by its pricing policies. The SAC appears to allege that Alfred Angelo participated in both a horizontal and a vertical boycott, but the allegations do not support a claim under either theory.

As to a horizontal boycott, House of Brides claims that Alfred Angelo "agreed with other retailers, including its own retail stores, to terminate [House of Brides] and boycott [House of Brides] from purchasing AA's products." SAC, ¶ 77. The only fact alleged to support that claim, though, is that the other customers complained about House of Brides' failure to follow the pricing policies. That detail alone is not enough to plausibly suggest a horizontal conspiracy among House of Brides' competitors; as the Seventh Circuit has observed, complaints about

competitor non-compliance with a manufacturer's distribution requirements are the "natural and unavoidable reactions by distributors to the activities of their rivals." *Miles Distribs., Inc. v. Specialty Const. Brands, Inc.*, 476 F.3d 442, 449 (7th Cir. 2007) (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984)). House of Brides argues that the complaints from retailers in this case included threats to stop purchasing from Alfred Angelo, but even assuming that claim to be true, it falls short of plausibly alleging a horizontal agreement among the retailers. *Twombly* itself is instructive here, because in that case the Supreme Court ruled that "an allegation of parallel conduct and a bare assertion of conspiracy" are insufficient to plausibly support a claim of concerted action. 550 U.S. at 556. House of Brides offers no factual allegations at all to support an inference that, in complaining about House of Brides' refusal to abide by pricing policies, retailers were conspiring together to force Alfred Angelo's hand.

More fundamentally, the allegations about boycott threats by other retailers do not establish a horizontal agreement *that included Alfred Angelo*. While Alfred Angelo also operated retail stores, we may safely assume that those stores would not have agreed to boycott Alfred Angelo products. What the SAC really alleges, then, is not that Alfred Angelo participated in a horizontal boycott, but rather that Alfred Angelo sought to enforce its distribution policies against House of Brides. *See* SAC, ¶ 77. In other words, the SAC alleges that Alfred Angelo sought to impose an unlawful vertical restraint, a claim that requires a showing that the defendant has market power in the relevant market. *See Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 293-98 (1985); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004). Analyzed as a claim against a vertical restraint, the boycott claim fails for the reasons already explained in the context of the Sherman Act price fixing claim:

House of Brides fails to allege facts that plausibly support any claim that depends on a showing that Alfred Angelo has market power.

Alfred Angelo's response brief highlights a case that illustrates the point well. In *Rosen v. Hyundai Group (Korea)*, 829 F. Supp. 41 (E.D.N.Y. 1993), the district court considered an analogous boycott claim. The case involved a plaintiff who was a distributor of Schumann brand pianos; after numerous disputes, including as to the plaintiff's desire to sell the pianos at deeply discounted prices, the manufacturer's representative terminated the plaintiff as a distributor, and the plaintiff sued, alleging, *inter alia*, that the defendants had engaged in a group boycott in violation of § 1 of the Sherman Act. *Id*. at 44, 47. In granting summary judgment for the defendants, the district court found, among other things, that it was "patently unreasonable" to define the relevant product market as the market for Schumann pianos, noting that "[i]f such a definition was allowed to stand, all manufacturers would have absolute monopoly power in the relevant product market, since by definition they control the total output of their own products." *Id.* at 47-48. Accordingly, the district court concluded that the plaintiff had failed to establish that the purported boycott agreement had, in any way, affected interbrand competition in the United States piano market. *Id.* at 48.

The same reasoning applies here. Since the SAC thus does not adequately state a claim for either a horizontal or vertical boycott, and it has already had the chance to amend its pleading to supply facts that might cure this deficiency, Count V is dismissed with prejudice.

### C. Count VII: Illinois Antitrust Act

The Illinois Antitrust Act prohibits, *inter alia*, contracts, combinations, and conspiracies that unreasonably restrain trade or commerce. 740 Ill. Comp. Stat. 10/3(2). As in the prior complaint, the Illinois Antitrust Act claim in the SAC incorporates the allegations made in

support of the federal antitrust claims and offers no independent support for liability under state antitrust law. Count VII is therefore dismissed with prejudice.

### D. Count VI: Robinson-Patman Act

Section 2(a) of the Robinson-Patman Act prohibits anticompetitive price discrimination. 15 U.S.C. § 13(a). As the Supreme Court previously explained, "price discrimination" means "price difference." *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 558 (1990) (quoting *F.T.C. v. Anheuser-Busch, Inc.*, 363 U.S. 536, 549 (1960)). Price discrimination claims generally fall into three categories: primary line, secondary line, and tertiary line. *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006); *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 513, 521-22 & n.2 (7th Cir. 2011). The essence of House of Brides' Robinson-Patman Act claim is that House of Brides was treated differently than Alfred Angelo's favored purchasers, which makes this a "secondary-line" claim. The "hallmark" of a secondary-line price discrimination injury "is the diversion of sales or profits from a disfavored purchaser to a favored purchaser." *Volvo Trucks*, 546 U.S. at 177. As the Court's opinion on the prior complaint explained, "[t]o state a secondary-line price discrimination claim under the Robinson-Patman Act, Plaintiffs must allege: (1) a seller made at least two relevant sales in interstate commerce; (2) the products sold were of like grade and quality; (3) the seller discriminated in price *between the plaintiff and another purchaser*; and (4) the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored purchaser" (emphasis added).

House of Brides alleges that Alfred Angelo discounted the sale of its own products below the prices set in its policies, both in brick-and-mortar stores and online. As the Court pointed out in its ruling on the prior complaint, this is an allegation that Alfred Angelo failed to follow its own minimum pricing policy, not that it charged House of Brides a different price than other

13

purchasers. That Alfred Angelo discounted retail prices at its own stores below the prices charged for its products by other retailers says nothing about whether its wholesale pricing to other retailers was discriminatory. *See, e.g.*, *O'Byrne v. Cheker Oil Co.*, 727 F.2d 159, 164 (7th Cir. 1984) ("[T]here is no violation [of § 2(a)] unless discrimination is 'in price between different purchasers' on the same level of competition." (quoting 15 U.S.C. § 13(a)); *Fresh N' Pure Distribs., Inc. v. Foremost Farms USA*, No. 11-C-470, 2011 WL 5921450, at *5 (E.D. Wis. Nov. 28, 2011) ("[T]here are innumerable reasons why a competitor might offer a lower price, even to the extent of offering promotions that result in its selling a product at a loss . . . .").

In an effort to remedy that deficiency, House of Brides argues that it has alleged in Paragraphs 81 and 83 of the SAC "that AA sold to its own stores at prices lower than it sold these same products to Plaintiffs." Resp., Dkt. 69, at 7. There are two problems with this argument. First, the paragraphs cited do *not* allege that Alfred Angelo charged other retailers more than it did its own stores; they state only that "AA has sold its goods at its own retail stores below the MSRP and below the MPR" and that "[o]n numerous occasions, AA has sold AA products [at its] own retail stores at lower prices than the MSRP and MPR than Plaintiffs." SAC, ¶¶ 81, 83. These allegations speak only to the retail pricing; they do nothing to establish that Alfred Angelo engaged in wholesale price discrimination among retailers of its products.

Second, it is well established that a plaintiff does not allege a cognizable Robinson-Patman Act claim by alleging that a corporate parent sold goods at more favorable terms to a subsidiary than to other customers. *See O'Byrne*, 727 F.2d at 164 (finding that the defendant, an oil company, did not sell to company-owned gas stations within the meaning of § 2(a)); *see also, e.g.*, *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745, 749-51 (1st Cir. 1994); *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 279 (8th Cir.

1988); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 217 (6th Cir. 1985); *Sec. Tire & Rubber Co. v. Gates Rubber Co.*, 598 F.2d 962, 965 (5th Cir. 1979); *Brown v. Hansen Publ'ns, Inc.*, 556 F.2d 969, 971-72 (9th Cir. 1977); *Accurate Control Sys. v. Neopost, Inc.*, No. 00C50128, 2002 WL 1379132, at *1 (N.D. Ill. June 25, 2002). House of Brides offers no contrary authority but asserts that "AA has failed to establish that the AA retail stores were its 'subsidiary.'" Resp., Dkt. 69, at 7. That argument ignores the import of House of Brides' own pleadings, however, which (taken as true) amply establish that Alfred Angelo owns some 60 Alfred Angelo Signature Stores throughout the United States. The SAC alleges that Alfred Angelo "started" and "operates" the stores and repeatedly alleges that Alfred Angelo is a competitor of House of Brides by virtue of "the opening of its retail stores," that it seeks to "insulate the retail stores it owns or controls" from competition, that it seeks to raise prices at "AA's own retail stores," while conversely alleging that Alfred Angelo was selling dresses below the MSRP and MPP prices at "its own retail stores," and that Alfred Angelo's "own retail stores" were participating in the alleged boycott of House of Brides. SAC, ¶¶ 50, 51, 59, 64, 65, 77, 81-82. And removing any possible ambiguity about what it meant by Alfred Angelo's "own retailers," in its response brief House of Brides contrasts Angelo's "own retailers" with other "brick and mortar (*i.e.*, non-company owned) retailers." Resp., Dkt. 69, at 8.

House of Brides invokes Alfred Angelo's "non-company owned" retailers in order to argue that the SAC alleges "that AA treated its online retailers, such as Plaintiffs, differently than AA's 'brick and mortar (*i.e.*, non-company owned) retailers' (SAC ¶¶ 42-47, 49-66, 77)." Resp., Dkt. 69, at 8. Not so. None of the allegations House of Brides points to says anything at all about price discrimination by Alfred Angelo between its distributors, whether online or "brick and mortar"; none alleges that Alfred Angelo charged "brick and mortar" retailers less for its

15

products than it charged House of Brides. Rather, the SAC alleges that Alfred Angelo instituted different minimum pricing policies for online and retail sales, respectively, but again, the fact (assuming it to be true) that Alfred Angelo tried to institute different policies to govern the online and retail prices charged by the distributors says nothing about whether Alfred Angelo charged different prices to those distributors.

Thus, at bottom, the Robinson-Patman claim set forth in the SAC suffers from the same fundamental flaw that required dismissal of the version that appeared in the prior complaint: there are no allegations that Alfred Angelo charged other retailers less for its products than it did House of Brides. Accordingly, Count VI is dismissed with prejudice.

### E. Count IX: Tortious Interference with Business Expectancy

The Court previously dismissed House of Brides' claim for tortious interference with business expectancy because the prior complaint did not allege that Alfred Angelo directed action toward a third party or class of third parties with whom the expected business relationship would occur, a requirement under Illinois law. *See Ali v. Shaw*, 481 F.3d 942, 945-46 (7th Cir. 2007) (collecting cases); *Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2002 WL 31507167, at *2 (N.D. Ill. Nov. 12, 2002) (same); *see also Hackman v. Dickerson Realtors, Inc.*, 746 F. Supp. 2d 962, 972 (N.D. Ill. 2010); *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 288 Ill. App. 3d 880, 888, 681 N.E.2d 564, 570 (1997); *Du Page Aviation Corp. v. Du Page Airport Auth.*, 229 Ill. App. 3d 793, 804, 594 N.E.2d 1334, 1341 (1992). Under Illinois law, the interfering action must be "directed in the first instance at the third party." *Schuler v. Abbott Labs.*, 265 Ill. App. 3d 991, 995, 639 N.E.2d 144, 148 (1993) (rejecting the argument that a defendant took action directed at third-party prospective-employer companies when it indicated to the plaintiff that it would enforce a non-competition agreement); *see also State Nat'l Bank v.*

*Academia, Inc.*, 802 S.W.2d 282, 296 (Tex. App. 1990) (applying Illinois law and requiring "some conduct directed toward a third party through which defendants purposely cause that third party not to enter into or continue a prospective contractual relationship with plaintiff").

In a feeble attempt to remedy this problem, House of Brides has now alleged that by attempting to fix prices, Alfred Angelo was "directing its interference at [House of Brides'] customers." SAC, ¶ 99. This conclusory allegation, unadorned by any supporting facts, is insufficient. The SAC offers no allegations that Alfred Angelo directed any communications to House of Brides' customers or otherwise engaged with those customers in any way. Rather, the SAC describes efforts by Alfred Angelo to require its distributors to follow certain pricing policies; communications about those policies were directed (not surprisingly) to House of Brides (and other distributors), not to consumers. That consumers may ultimately have been affected by Alfred Angelo's actions in seeking to enforce its pricing policies on its distributors does not give rise to a tortious interference with business expectancy claim. Potential customers of the parties to a commercial contract may be affected by *any* dispute that threatens performance under that contract; permitting these secondary effects to give rise to a claim for tortious interference would expand the scope of the tort well beyond the bounds recognized by any Illinois court. House of Brides has cited no case that would support or endorse such an expansion, a result that would run contrary to the state's concern with preventing "every breach of contract from becoming a tort claim for expectancies lost as a result of the breach." *Douglas Theater*, 288 Ill. App. 3d at 888. Alfred Angelo's actions were directed in the first instance toward House of Brides, not House of Brides' customers. Count IX is therefore dismissed with prejudice.

### F. Count VIII: Tortious Interference with Contract

In Count VIII, House of Brides asserts a new claim for tortious interference with contract. This claim generally requires the plaintiff to show "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012) (quoting *Complete Conference Coordinators, Inc. v. Kumon N. Am., Inc.*, 394 Ill. App. 3d 105, 109, 915 N.E.2d 88, 93 (2009)) (internal quotation marks omitted).[3] Importantly, the third element requires the plaintiff to show that the defendant's conduct was improper. *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 484-85, 693 N.E.2d 358, 371 (1998). Conduct may be improper if it is "in violation of statutory provisions or contrary to established public policy." *Prudential Ins. Co. of Am. v. Van Matre*, 158 Ill. App. 3d 298, 306, 511 N.E.2d 740, 745 (1987) (quoting Restatement (Second) of Torts § 767 cmt. c (1979)) (internal quotation marks omitted). Conduct to promote one's own economic interest is generally not regarded as improper unless it is inherently wrongful. *See Curt Bullock Builders, Inc. v. H.S.S. Dev., Inc.*, 225 Ill. App. 3d 9, 16, 586 N.E.2d 1284, 1290 (1992) ("To the extent that a party acts to enhance its own business interests, it has a privilege to act in a way that may harm the business expectancy of others . . . ."); *see also, e.g., Oak Agency, Inc. v. Warrantech*

---

[3] Illinois law appears to be somewhat unsettled with respect to whether a claim for tortious interference with contract requires that the breach be by the third party and that (like a claim for tortious interference with business expectancy) the defendant's actions be directed towards the third party. *See Fresh N' Pure*, 2011 WL 5921450, at *8-10 (discussing the split of authority among Illinois state courts). These issues are potentially relevant since Alfred Angelo argues in its reply (but not its opening brief) that House of Brides' tortious interference with contract claim is deficient since the SAC fails to allege that Alfred Angelo's actions were directed to any third party. It is not necessary to resolve this question, however, since the tortious interference with contract claim fails in any event, as explained below.

*Corp.*, No. 96 C 1106, 1997 WL 232619, at *2 (N.D. Ill. May 2, 1997) (denying claim for tortious interference with contract since the defendant "was privileged to act in its subsidiary's economic interest . . . absent some egregious conduct").

Alfred Angelo asserts that by alleging that Alfred Angelo's actions undermined future contracts, House of Brides concedes that those actions did not cause the breach of any existing contracts. House of Brides counters that Alfred Angelo is reading the SAC too narrowly, and that the SAC alleges interference with both existing and future contracts in stating that "Plaintiffs have numerous orders for bridal gowns and wedding dresses that they are unable to fulfill because of AA's actions." SAC, ¶ 68. Crediting House of Brides' assertion that in the bridal industry "orders" refer to contracts, Resp., Dkt. 69, at 9, a plausible inference may be drawn that there existed some number of valid enforceable contracts between House of Brides and individuals who had already placed orders through House of Brides for Alfred Angelo products. It cannot fairly be said, then, that the SAC does not plausibly allege the requisite contracts.

Where the tortious interference with contract claim does fall short, however, is in House of Brides' failure to adequately allege that Alfred Angelo's conduct was improper.[4] It is the plaintiff's burden to adequately plead "that the defendant's conduct was unjustified." *HPI Health Care Servs. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 158, 545 N.E.2d 672, 67 (1989); *see also Bonser v. Cazador, LLC*, No. 12-CV-4889, 2012 WL 5989350, at *3-4 (N.D. Ill. Nov. 28, 2012)

---

[4] This rationale applies as well to the claim for tortious interference with business expectancy. *See Fid. Nat'l Title Ins. Co. v. Westhaven Props. P'ship*, 386 Ill. App. 3d 201, 219, 898 N.E.2d 1051, 1067 (2007) (to prevail on such claim, a plaintiff must show "some impropriety committed by the defendant in interfering with plaintiff's business expectancy"); *see also Acoustical Surfaces, Inc. v. Vertetek Corp.*, No. 13-CV-4837, 2014 WL 1379864, at *7 (N.D. Ill. Apr. 8, 2014) ("Tortious interference with contract and tortious interference with business expectancy are related torts that recognize that one's business relationships . . . are entitled to protection from unjustified tampering by another."); Restatement (Second) of Torts § 767 cmt. a (interference with both contract and business expectancy must be improper).

(discussing conflicting case law and concluding that Illinois law requires a plaintiff to plead that the defendant's conduct "was unjustified or improper"). As discussed above, House of Brides' antitrust claims are insufficient as a matter of law, so those claims provide no basis for an inference of wrongful conduct in connection with the tortious interference claims, and the SAC alleges no other wrongful conduct. *Cf. S.J. Glauser DCJB, L.L.C. v. Porsche Cars N. Am., Inc.*, No. CIV.A. 05-CV-01493-P, 2006 WL 1816458, at *12 (D. Colo. June 30, 2006) (dismissing tortious interference with contract claim where the plaintiff's antitrust claims were not viable and the complaint did not allege other wrongful conduct). So far as the facts alleged in the SAC plausibly establish, Alfred Angelo did not wrongfully attempt to require distributors to abide by its pricing policies; consequently, that attempt did not constitute tortious interference with any contract or business expectancy that House of Brides may have had with any of its customers. Count VIII is therefore dismissed with prejudice.

\* \* \*

For the foregoing reasons, the motion to dismiss Counts IV through IX is granted. And because House of Brides has had multiple opportunities to replead, and added virtually no fact allegations to remedy the deficiencies identified in its first amended complaint, the Court concludes that further amendment of these claims would be futile. The dismissal of these claims is therefore with prejudice. *See Stanard v. Nygren,* 658 F.3d 792, 801 (7th Cir. 2011) (denying leave to file second amended complaint where the plaintiff had failed to correct deficiencies identified in prior complaint).

Date: December 4, 2014

John J. Tharp, Jr.
United States District Judge