**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HOUSE OF BRIDES, INC., HOUSE OF BRIDES WORLD'S LARGEST ONLINE WEDDING STORE, INC., HOB HOLDING CORPORATION, and HOB I HOLDING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 07834 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| ALFRED ANGELO, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

"They say that breaking up is hard to do."[1] In this business divorce, the "Brides" (plaintiffs House of Brides, Inc., World's Largest Online Wedding Store, Inc., HOB Holding Corporation, and HOB I Holding Corporation) and their erstwhile spouse, defendant Alfred Angelo, Inc. ("Angelo"), a manufacturer of wedding apparel and accessories, blame each other for the breakdown of their longstanding commercial marriage. Accusing Brides of cheating (selling Angelo's products online and at discounted prices and failing to pay for merchandise), Angelo ultimately stopped filling orders for Brides, which countered by filing suit. This opinion addresses what remains of the parties' respective claims about broken promises.[2] Brides sues for breach of contract (Count I), breach of warranty (Count II), and declaratory judgment (Count III). Angelo's counterclaim asserts, as relevant here, breach of contract under the UCC and the common law. Angelo now moves for summary judgment on all of Brides' remaining claims

---

[1] NEIL SEDAKA, BREAKING UP IS HARD TO DO (RCA VICTOR 1962).

[2] Prior opinions (ECF Nos. 57 and 72) dismissed Brides' antitrust and tortious interference claims against Angelo, and Angelo does not move for judgment on its unfair competition claims.

against it as well as for judgment on its own claims relating to the nonpayment.[3] For the reasons that follow, the motion is granted in part and denied in part.

## I.  Facts

Angelo manufactures and distributes wedding apparel and accessories; in recent years it also began operating its own retail stores. Brides sells wedding products, primarily bridal gowns and bridesmaid dresses, both at retail stores and over the Internet. For more than forty years, Brides was an authorized dealer of Angelo products. Eva Buziecki is the president of Brides; her husband Dale is an independent consultant and former company principal, and their son Jason is the supervisor of Internet sales.

Throughout the parties' commercial relationship, Brides would receive orders for Angelo products in its retail stores or on its website. Pursuant to Angelo's Confidential Price List, Brides transmitted purchase orders to Angelo, which contained the quantity, style number, description, and size of the selected dresses, and listed the wedding date associated with the order. Angelo in turn sent an "Order Acknowledgement" listing a "requested shipping date."[4] Angelo would then

---

[3] Angelo requests judgment on Counts I through VII of its counterclaim, *see* Mot. for Summary Judgment 2, ECF No. 75. But it makes no argument supporting judgment in its favor on Count V (Promissory Estoppel), Count VI (Conversion), or Count VII (Unjust Enrichment). Its arguments all pertain to its theories of relief for the nonpayment, variously labeled "Uniform Commercial Code" (Count I); "Breach of Contract" (Count II); "Goods Sold and Delivered" (Count III); and "Account Stated" (Count IV). These all describe one set of facts producing one injury and are essentially the same "claim" stated with various theories of relief. *See N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992).

[4] Brides repeatedly refers to a "confirmation date" and an "agreed delivery date," in quotation marks as though these are terms of art found in the parties' orders, but no contractual document in the record contains this term. Only Brides' declarants use this term. Brides' purchase orders reflect an order date and a "wedding date." Angelo's order acknowledgments (or, "written confirmation of the order," in Brides' parlance) list only a "requested shipping date." The invoices reflect only the invoice date. Brides maintains that the "confirmation date" or "agreed delivery date" was a material term of the parties' contracts, but it does not provide any evidence that such a date existed and if so, where it is recorded.

send an invoice for the products when it shipped them. Orders took up to three or four months to ship.

Between March 2011 and September 2011, Angelo shipped $294,772.70 worth of orders to Brides for which Brides did not remit any payment. Brides received the products and the invoices, which reflected payment terms of "Net 30" or "8/30 EOM." Effective August 12, 2011, Angelo terminated its relationship with Brides and declined to fill any more orders. With respect to orders already placed but not delivered, Brides states that "hundreds of purchase orders" that Angelo had confirmed were not shipped. Pl. Stmt. of Add'l Facts ¶ 21, ECF No. 82 at 14. Angelo says that it "continued to ship goods to Brides based on its representation to pay for goods, which Brides failed to do." Def. Resp. to Add'l Facts ¶ 21, ECF No. 90 at 12.

According to Brides, "from the commencement" of the 40-year commercial relationship Angelo had "provided verbal payment terms" to account for the "seasonal cash flow" of House Brides. According to Brides, this arrangement permitted smaller payments in "lower cash flow months, such as in October, November, and December" and larger payments during the first fiscal quarter. Angelo denies that it ever agreed to modify terms of payment.

Beginning in 2010, Brides noticed a change in the delivery of its orders from Angelo, with "many orders" not being delivered by the date requested. Brides' customers depended on receiving their orders in advance of the wedding date, with sufficient time for alterations. If the dresses did not arrive in time, the customers would demand refunds from Brides. On "numerous occasions," Angelo delivered dresses too late. According to Brides, "approximately 90%" of the orders reflected in the invoices that are the subject of Angelo's claim were not delivered by what Brides refers to as "the agreed confirmation date."

Also on "numerous occasions," Angelo shipped the wrong dress, a duplicate dress, or a defective dress when filling a purchase order. Brides did not inspect orders upon delivery. It kept each order packaged up until the retail customer opened it to try on in the store or when delivered to her at home. Until the customer inspected the order, Brides did not know about any defect or problem. Brides would provide a refund to the customer on demand. Brides therefore was "forced to pay for" dresses that were defective, incomplete, or otherwise wrong. Brides retained all of the orders from Angelo that customers returned.

Jason Buziecki and other unnamed representatives of Brides contacted unnamed representatives of Angelo to notify them of customers' cancelations due to missed dates or other defects. Angelo would not accept returns of the refunded orders. Brides "regularly" contacted Angelo's sales representative by telephone to inform Angelo about "the widespread non-conformities and late deliveries" and request refunds. Dale Buziecki at some point told the CFO of Angelo, Joe Weltz, that Brides "was requesting a credit and reimbursement for incidental expenses on account of the orders that had been canceled." According to Brides, it incurred losses of $254,556 in refunds to its customers, although it is not clear over what time period these losses occurred.

Brides sued Angelo in the Circuit Court of Cook County, Illinois, on October 7, 2011, asserting claims of breach of contract and breach of warranty and further seeking a declaratory judgment of its rights. Angelo removed the action to this Court, where it filed its counterclaim for, among other things, breach of contract. The plaintiffs amended their complaint to add various claims for antitrust violations and business torts, all of which have since been dismissed through motion practice. Angelo now moves for summary judgment on its nonpayment claims as

well as on the remaining counts of the plaintiffs' Second Amended Complaint. The plaintiffs contest the motion but do not move for judgment on their own claims.

## II.    Discussion

Angelo is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact, and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). A fact is "material" if it is one identified by the law as affecting the outcome of the case. *Hess v. Bresney*, 784 F.3d 1154, 1158 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In assessing the motion, this Court must construe all facts and draw reasonable inferences in the light most favorable to Brides, the nonmoving party. *See id.*

### A.    Breach of Contract and Seller's Remedies under the UCC

As Brides rightly points out, Angelo's common-law contract claim is duplicative of its UCC claim; it cannot recover under both theories for the same breach of contract. The parties agree, and there should be no doubt, that the UCC governs contracts for the sale of goods and therefore applies to the claims here. 810 ILCS 5/2-102; *see Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997); *Yorke v. B.F. Goodrich Co.*, 130 Ill. App. 3d 220, 223, 474 N.E.2d 20, 22 (1985). The UCC supplants common-law principles to the extent there is any conflict. *See* 810 ILCS 5/-103(b); *Cont'l Cas. Co. v. Am. Nat'l Bank & Trust Co. of Chicago*, 329 Ill. App. 3d 686, 698, 768 N.E.2d 352, 362 (1st Dist. 2002).

Here, Angelo's claim of nonpayment for goods is squarely within the purview of Section 2-709 of the UCC, which provides that "when the buyer fails to pay the price as it becomes due

the seller may recover, together with any incidental damages . . . the price of goods accepted."
810 ILCS 5/2-709(1)(a). Under the UCC, the seller's tender of delivery triggers the buyer's
obligation to accept and pay for the goods. 810 ILCS 5/2-507(1).

There is no dispute of material fact regarding Brides' nonpayment. The goods
corresponding to the invoices placed into evidence by Angelo were ordered, delivered, retained,
and not paid for. Angelo therefore is entitled to its remedies under § 2-709, absent some valid
defense. *See S.P. Richards Co. v. Bus. Supply Corp.*, No. 07 CV 1753, 2008 WL 4181729, at *3
(N.D. Ill. Sept. 5, 2008); *MacSteel Int'l USA Corp. v. Superior Products Co. (Superior Wire
Div.)*, No. 98 C 7182, 2002 WL 472288, at *8 (N.D. Ill. Mar. 27, 2002); *Real Colors, Inc. v.
Patel*, 39 F. Supp. 2d 978, 991 (N.D. Ill. 1999).

Although it cannot dispute the fact of its nonpayment, Brides contends that Angelo is not
entitled to recover the price of the shipped goods. First, it contends that it did not "fail to pay the
price" because the payment terms on the invoices were inapplicable in light of the parties' course
of dealing. Second, it argues that it either rejected or revoked acceptance of the goods,
justifiably, and therefore it does not owe payment.

### 1.    Course of dealing

Brides argues that it did not "fail to" pay for the goods it received from Angelo, because
pursuant to the parties' longstanding course of dealing, payment was not due upon receipt of the
goods or according to the terms of an invoice. Rather, according to the "verbal agreement"
between the parties at the time of the inception of their business relationship, payments were due
when Brides' "seasonal flow" of cash permitted.

Brides fails to submit admissible evidence to support this theory and, therefore, it does
not create a genuine issue of material fact as to the existence of an oral modification of the

contract terms. Under the UCC, written contract terms "may be explained or supplemented" by "course of performance, course of dealing, or usage of trade," but "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." 810 ILCS 5/2-202; *id.* 5/1-205; see *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 298 (7th Cir. 2002) ("A practice, under the rubric of 'course of dealing,' can be evidence of what a contract requires."). Here, however, rather than explaining or supplementing the contract, Brides is attempting to contradict the written terms with evidence of a contemporaneous oral agreement. Moreover, that evidence—Dale Buziecki's testimony that "verbal payment terms" were agreed to—is not competent. Brides is claiming that an oral agreement defined its obligation under the contract.[5] Such changes to material terms are subject to the statute of frauds (to the extent the contract price exceeds $500). *See* 810 ILCS 5/2-209(3); 810 ILCS 5/2-201. Brides has no writing to evidence the "seasonal cash flow" payment term it seeks to enforce against Angelo. *See Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2002) ("The purpose of the statute of frauds is to prevent a contracting party from creating a triable issue concerning the terms of the contract-or for that matter concerning whether a contract even exists-on the basis of his say-so alone.").

But, even assuming that Brides had admissible evidence of a "course of dealing" altering the payment sufficient to create an issue of fact as to the existence of the arrangement, Brides submits no evidence to suggest that the arrangement would excuse its total nonpayment for nearly $300,000 worth of goods. Brides says simply that it was to make larger payments during its busy season and smaller payments in "October, November, and December." The invoices in the record are from March to October 2011—a time period that encompasses the busy summer

---

[5] Perhaps what Brides means to argue is that through its course of dealing, Angelo has waived enforcement of the written payment terms. But what it in fact argues is that there were alternate "verbal payment terms."

season. Yet it remitted no payment for those orders, and has not to this day. Whatever the parties' course of dealing, Brides wholly fails to establish that it would excuse the nonpayment evidenced by the record.

### 2. Rejection or Revocation of Acceptance

Brides next contends that payment for the shipped dresses was not required because it did not "accept" the dresses. Under the UCC, a buyer's acceptance of goods binds it to pay the contractually agreed-upon price for them. 810 ILCS 5/2-607(1). "Acceptance" is defined as follows: "(1) Acceptance of goods occurs when the buyer: (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or (b) fails to make an effective rejection (subsection (1) of Section 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him." 810 ILCS 5/2-606(1). In other words, "[u]nder the UCC, goods are deemed accepted if the buyer . . . fails, after having had a reasonable amount of time in which to inspect them, to communicate its rejection to the seller." *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649, 655 (7th Cir. 1998). Under this "commonsensical rule," the seller "is entitled to know where he stands, so that he can cure any defects in the goods," and the parties "save[] on paperwork by allowing silence to count as acceptance." *Id.*

Brides says it did not "accept" the orders for which it withheld payment. It makes the argument only as a general matter, however. It does not point to a single specific order that it rejected or as to which it revoked acceptance, nor does it argue that it took one of these actions with respect to *every* order corresponding to the invoices in the record. It therefore does not

create a genuine issue of material fact with respect to any of the invoices as to which Angelo has sued for the price. In any case, as set forth below, under the requirements of the UCC, the Brides fails to marshal evidence that it rejected or revoked acceptance of the dresses for which Angelo seeks payment.

*a. Rejection*

Brides first says that it did not "accept" the goods in question because it timely rejected them. A rightful rejection of goods must be (1) made within a reasonable time after their delivery and (2) communicated "seasonably" to the seller. 810 ILCS 5/2-602(1); *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 574 (7th Cir. 1985) ("The failure timely to reject operated as an acceptance of the excess goods.").

Here, Brides has not provided any specific information as to when it rejected each order, making it impossible to determine whether such rejection occurred within a "reasonable" time after delivery. Brides also fails to establish when and how it communicated its rejection to Angelo. The general statements in the Buzieckis' declarations fall far short of showing that a rejection was clearly and timely communicated. For example, Dale Buziecki attests that at an unspecified time he "conveyed' to Angelo "Brides Inc.'s intent to obtain reimbursement for cancelled orders and incidental expenses," and further that he "had several conversations" with Angelo's CFO, again at unspecified times, "regarding the issues with Angelo's deliveries, including their defects, untimeliness, and duplicates." This testimony does not permit the inference than any particular order was seasonably rejected, let alone that all of the orders at issue were rejected. "[A] complaint about the quality of goods is simply not the same thing as a rejection." *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Grp., Inc.*, 218 F. Supp. 2d 974, 977 (N.D. Ill. 2002) ("any such generalized and conclusory assertion, unsupported as it is

by any specific statement as to a real turndown of the goods, is insufficient to raise a genuine issue for trial on the question of rejection"). Furthermore, Brides does not dispute that it kept all of the dresses and did not segregate them for Angelo's benefit, *see* § 2-602(1)(b), although the extent to which the dresses were successfully resold to the retail customers is not clear from the record.[6] Brides, however, does not claim that it was exercising any of the buyer's permitted options under the UCC for rejected goods. See 810 ILCS 5/2-602–604

Moreover, under the UCC, the buyer's rejection must be "rightful" in order to excuse its payment. "If the seller has made a tender which in all respects conforms to the contract, the buyer has a positive duty to accept and his failure to do so constitutes a 'wrongful rejection' which gives the seller immediate remedies for breach." 810 ILCS 5/2-602 cmt. n.3. Accordingly, Brides must establish that it rightfully rejected the goods owing to some nonconformity. Yet again, however, Brides makes no attempt to establish that any particular order was non-conforming in a specific way and that Angelo seasonably received notice of the nonconformity. The various defects that Brides generally refers to, such as duplicate shipments or dresses in the wrong color or style, have not been supported with evidence. Neither has the alleged lateness of the deliveries. Although Brides offers a summary document purporting to show that many orders were received late, it has failed to establish that there was any agreed upon delivery date for any order. The "confirmation" date to which Brides frequently refers is not established with reference to any contractual document in the record.

---

[6] Angelo also contends that Brides has sold and is offering for sale the purportedly "rejected" goods on its website, but the only evidence it has to support this theory are screenshots from the Brides website and the testimony of Paul Quentel that it he believes that Brides is selling the dresses. This evidence does not establish that Brides is selling the same dresses that it claims to have rejected. There is no dispute that Brides retained all the goods, but it says that Angelo would not take them back despite efforts to return them. Angelo refers to a 15-day return policy, but it did not submit any evidence of such a term of the parties' contract in the record until its reply, which is too late. *See* pp. 14-15, *infra*.

Under these circumstances, Brides fails to raise a genuine issue of material fact that rejection excused its payment obligation as to every unpaid invoice.

### b. Revocation of Acceptance.

Alternatively, Brides contends, if it did not reject the orders, it revoked its acceptance and therefore does not owe the price of the goods.

Under the UCC, 810 ICLS 5/2-608(1), a buyer is permitted to revoke acceptance as to goods "whose non-conformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." The revocation must happen within a "reasonable time" after the buyer discovered or should have discovered it, and "[i]t is not effective until the buyer notifies the seller of it." *Id.*

Brides must first establish, therefore, that it was permitted to revoke acceptance based on non-conformities that substantially impaired the value of the goods. "In order to revoke acceptance . . . the buyer must present objective evidence showing that with respect to his own needs, the value of the goods was substantially impaired." *GNP Commodities, Inc. v. Walsh Heffernan Co.*, 95 Ill. App. 3d 966, 978, 420 N.E.2d 659, 669 (1981). The testimony of the Brides' affiants—assuming its admissibility for the moment—establishes that some dresses were delivered too late to use in the intended wedding, or came in the wrong style or color, or were defective in some way. As the custom products were meant for particular participants and for specific events, deviations would indeed be costly. However, although this general proposition is clear, Brides nevertheless fails, again, to show *which* orders of the thousands it failed to pay for had such defects, what those defects were, and whether Angelo was notified and given the

opportunity to cure. Brides does not contend that it revoked acceptance of every single order and has not adduced evidence that every invoiced order contained some non-conformity that impaired its value.

Moreover, Brides admits it does not inspect Angelo products when delivered. It could revoke acceptance, therefore, only if "acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Brides does not claim to have received any assurances, so it could establish a valid revocation only based on "difficulty of discovery" of defects before acceptance. But it does not contend that there was any such "difficulty" as a practical matter and, as Angelo notes, the types of defects about which Brides complains are all evident, or easily discoverable, upon delivery. Brides simply describes its practice of leaving it to the retail customer to inspect the goods and report any problem. But it does not argue, or attempt to prove, that this is a custom in the trade that might permit it to delay its obligation to inspect. S*ee GNP Commodities*, 420 N.E. 2d at 665.

Given these deficiencies, Brides falls short of raising any fact issue regarding its supposed revocation of acceptance.

### 3.    Set-Off

Brides also argues that Angelo cannot obtain summary judgment on its contract claim while Brides' own breach-of-contract claim is pending. Pl. Mem. 8-9, ECF No. 81. It argues that the UCC's set-off provision precludes any judgment for Angelo.

This argument fails. First, Brides has failed to create a genuine issue of material fact as to any defense it has for the nonpayment of the invoices on which Angelo moves for judgment. It likewise has not come forth with sufficient evidence from which a jury could conclude that Angelo breached any material term of the contract as to those invoices. As noted already, Brides

fails to identify with specificity any the orders that contained defective merchandise and what the defect was, nor does it establish that any orders arrived beyond a promised delivery date—or even that there *was* a promised delivery date with respect to any of the orders.

Furthermore, the set-off remedy is available only where the seller breached "the same contract under which the price in question is claimed to have been earned." In other words, a set-off of the price of any order is available only where Brides can establish a breach by Angelo as to the same order. Or, as one Illinois court has explained, the buyer of seafood cannot set off of the price of an order of frogs' legs because the seller had sent bad scallops in a previous order. *Berdex Int'l, Inc. v. Milfico Prepared Foods, Inc.*, 258 Ill. App. 3d 738, 741, 630 N.E.2d 998, 1001 (1st Dist. 1994).

Here, Brides attempts to group every order together and to deduct from the total price the total amount of damages it claims to be owed for numerous breaches by Angelo. But clearly the commercial relationship consisted of a series of contracts; each purchase order was for custom goods that were manufactured to order. A flower-girl dress ordered in June and a bridal veil ordered in August are as scallops and frogs' legs to each other. Brides cannot withhold payment for the veil to set off its damages for the dress; it could only exercise its remedies as to the dress. *See Berdex*, 630 N.E. 2d at 1001. It stands to reason Brides, which paid nothing for any of the orders at issue, was legitimately claiming a "set-off" only if every order was 100% defective. It has not come close to showing that.

Furthermore, to obtain a set-off, as to each defective order, Brides would have to notify Angelo of its intent to withhold from the price the amount of damages it incurred as a result of the defect. But Brides submits no evidence that it told Angelo why it was holding up payment on any particular order; again, the record reflects only generalized complaints made periodically.

As explained later, however, the fact that Brides is not entitled to a set-off against the invoices for which it is liable for payment (having failed to establish any defense) does not mean that its entire breach-of-contract claim fails. As the Court understands it, Brides' contract claim is broader in scope than the limited nonpayment claim lodged by Angelo. As to the invoices in its Group Exhibit A, however, Angelo has demonstrated its entitlement to payment for goods tendered, and Brides has not submitted evidence creating a genuine issue of material fact as to any of its defenses to payment.

**B.    Account Stated**

Angelo also moves for summary judgment on its alternate "claim" of account stated. "An account stated is an agreement between parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise for the payment of the balance." *Dreyer Med. Clinic, S.C. v. Corral*, 227 Ill. App. 3d 221, 226, 591 N.E.2d 111, 114 (1992); *see Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1139 (7th Cir. 2009).  However, "account stated" is not a cause of action, or an independent theory of liability. It determines the amount of the debt where liability already exists, and, therefore, it is "merely a form of proving damages for the breach of a promise to pay on a contract." *Dreyer Med. Clinic, S.C.,* 227 Ill. App. 3d at 226; *see GMAC, LLC v. Hillquist*, 652 F. Supp. 2d 908, 923 (N.D. Ill. 2009).

Here, Angelo submits that it notified Brides by email of an overdue balance, which Brides acknowledged and agreed to pay in installments, thus establishing indisputably the amount of the debt.  And the evidence in support of an account stated is indeed undisputed, but that is in large part because Angelo failed to supply such evidence until its reply, despite having argued for judgment on its account stated "claim" in its opening brief. Only in reply does Angelo

submit the supplemental affidavit of Paul Quentel and the correspondence purporting to show that Brides acknowledged the amount of its debt and agreed to a payment plan. The facts and evidence supporting the account stated do not appear in Angelo's initial Local Rule 56.1 Statement. Thus Brides had no opportunity to respond to the evidence and raise any dispute. The failure to properly raise the argument and set forth the supporting evidence its initial summary judgment filings waives Angelo's account stated argument and, for that matter, any argument based on this evidence.[7] *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) (arguments raised in reply brief are waived); *Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012) ("In managing summary judgment practice in their courts, district courts need to ensure that they do not base their decisions on issues raised in such a manner that the losing party never had a real chance to respond."). The motion for summary judgment on the account stated therefore is denied.

### C.    Brides' Claims

Finally, Angelo moves for summary judgment in its favor as to Brides' claims against it for breach of warranty and breach of contract. It contends that Brides has not adduced sufficient evidence to warrant a trial on these claims and further that if its own breach of contract claim succeeds, then Brides' must fail.

#### 1.    Breach of Warranty

Every UCC contract contains an implied warranty of merchantability, unless it is effectively excluded. 810 ILCS 5/2-314(1). Angelo contends that Brides has not adduced any admissible evidence that any of the goods it received would not "pass without objection in the trade," were not "fit for the ordinary purpose for which such goods are used," or otherwise were

---

[7] In its reply brief Angelo cites the same evidence in support of its breach-of-contract claim, and the evidence is not considered for that purpose, either. *See* Reply11-13, ECF 89. This means that the Supplemental Affidavit of Paul Quentel and the Affidavit of Tracy Fleming, and the accompanying exhibits, are effectively stricken.

unmerchantable. In response, Brides states: "Brides Inc. has claimed that there were defects and flaws in the goods provided that rendered the dresses not merchantable" and argues that merchantability is a question of fact for the jury. Pl. Mem. 16, ECF No.81.

Although Brides indeed "has claimed" that Angelo shipped defective goods, it has not supported that claim with admissible evidence. At most—even assuming admissibility—it has some evidence that refunds were issued to Brides customers, but the reasons for those refunds are not established, and Brides has no support for its implicit argument that a refunded order necessarily was unmerchantable within the meaning of the UCC. Of the evidence submitted by Brides, the Court discerns only the following as even potentially probative of the breach of warranty claim:

- "On numerous occasions AA shipped defective dresses to HOB, Inc. The defects included such issues as differences among the shade of colors of the dresses, frayed hems, shoddy sewing, missing buttons or issues with sashes." D. Buziecki Affidavit ¶ 19, Pl. Ex. A, ECF No. 82-1.

- "[O]n numerous occasions AA shipped defective dresses to HOB, Inc. Again, because of the lead time required to fix these issues, many customers cancelled its [sic] orders and HOB Inc. as a result lost sales to its customers." E. Buziecki Affidavit ¶ 10, Pl. Ex. B, ECF No. 82-2.

- "On numerous occasions within the relevant time period, HOB, Inc. learned from its online customers that AA had shipped duplicate or incomplete dresses. Similarly, AA shipped the wrong dress to HOB, Inc. on numerous occasions. As a result, HOB, Inc. lost sales to its customers. Similarly, on numerous occasions AA shipped defective dresses to HOB, Inc. Some examples of the defects that

HOB, Inc. customers would complain of included frayed bottoms, missing buttons, and varying shades of colors among dresses. As a result, HOB, Inc. lost sales to its customers." J. Buziecki Affidavit ¶¶8-10, Pl. Ex. C., ECF No. 82-3.

- "[T]he documents I reviewed showed that on numerous occasions AA shipped duplicate dresses, incomplete orders, or defective dresses to HOB, Inc. As a result, HOB, Inc.'s customers many times would cancel their orders and obtain a substitute dress elsewhere . . . . I compiled the documents. . . regarding refunds that HOB, Inc. was required to provide to its customers due to AA's actions, such as defective dresses, late deliveries, incomplete or duplicate orders or failed to send dresses as ordered. A compilation of those refunds is attached hereto as Exhibit 1. The total amount of these refunds was $254,556.84." M. Brehmer Affidavit ¶¶ 7, 9, Pl. Ex. D, ECF No. 82-4.

Chief among the problems with this evidence, as Angelo points out, is that it is largely hearsay. "A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001). None of the declarants states a basis for his or her personal knowledge of the alleged defects in the dresses. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). None of them claims to have seen or inspected any defective merchandise or to have personally issued a refund to a customer due to a non-conformity; the affiants' knowledge is apparently based on the reports of customers or staff members. Out of court statements by unknown sources, offered to prove the truth of the matter

asserted—the existence of defects—are hearsay. Fed. R. Civ. P. 801(c); *Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009). Brides does not submit a single affidavit from a retail employee or customer service representative who issued a refund due to a defect in a dress, or of a customer who insisted on a refund upon discovery of defect. And none of the Buzieckis bases his or her highly vague, general testimony about "defects" on the review of any authenticated business record that evinces defects in any particular order.[8] *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) (vague and general statements in affidavits insufficient to withstand summary judgment even if admissible). The plaintiffs' affidavits, consisting of nonspecific and hearsay testimony, are insufficient to preclude summary judgment. *See Haywood v. Lucent Techs., Inc.,* 323 F.3d 524, 533 (7th Cir. 2003); *Ward v. First Fed. Sav. Bank*, 173 F.3d 611, 618 (7th Cir. 1999).

To the extent that Brides would rely on Megan Brehmer's purported summary of refunds issued to customers, the summary is inscrutable and does not indicate what, if any, defect precipitated the customer refund. The fact of a refund (even assuming the summary chart were competent evidence that one was issued) does not establish a defect in the goods, let alone one that rendered it unmerchantable within the meaning of the UCC. Nowhere does Brides explain as to any particular order what the problem was and why that defect amounts to unmerchantability. Unless it were argued that every dress during the relevant time period suffered from the same defect making them all similarly unmerchantable, the plaintiffs would have to specifically identify the breaches of warranty it alleges. At the very least a sampling of specific defects,

---

[8] The plaintiffs get slightly closer with some of the documents they submit in response to Angelo's motion to strike, *see, e.g*. ECF No. 96-1, but none of those documents is authenticated or explained; they are submitted along with the declaration of one of their attorneys, not anyone with personal knowledge of the documents' provenance or significance. In any case, any evidence supportive of Brides' claims should have been filed in response to the summary-judgment motion, not in collateral proceedings on the motion to strike.

evidenced through photographs or the testimony of someone with personal knowledge, for example, would be required to establish that sufficient evidence exists from which a jury could conclude that any dress was not merchantable. Brides does none of this, however, failing utterly to come forth with admissible evidence creating a genuine dispute of fact. Summary judgment for Angelo is therefore appropriate.

### 2. Breach of Contract

Next, against Brides' breach-of-contract claim, Angelo argues that it is entitled to summary judgment because "the evidence establishes that Angelo fully performed on its shipments to Brides, Brides cannot establish that Angelo breached any contract." But Angelo fails to establish that it is entitled to judgment as a matter of law. Angelo appears to assume, without any basis that the Court can discern, that its breach-of-contract claim and Brides' claim are mirror images of each other. If that were true, then Angelo's evidence that it shipped goods that Brides failed to pay for without justification would preclude any relief for Brides. But that premise has not been established. Even though Brides is liable for nonpayment for the particular invoices on which Angelo based its nonpayment claims, Brides' contract claim appears broader.

First, for example, Brides claims that Angelo wrongfully repudiated or terminated the entire contract without notice when it declared that it would accept no more orders after August 2011. *See, e.g.*, 2d Am. Compl. ¶ 13, ECF No. 59. Angelo does not address this claim nor argue that the plaintiffs cannot marshal evidence to prove it. Second, Brides alleges that after the termination Angelo failed to ship orders had been confirmed before the termination date. Orders that were acknowledged but never shipped are not covered by Angelo's nonpayment claim, which pertains to orders that it shipped and invoiced. Although it does not admit outright that it did not fill orders that it had acknowledged, Angelo says only that it continued to ship the orders

"based on" the promise by Brides to adhere to a payment plan, which Brides broke. There is room to infer that, as Brides asserts, Angelo stopped shipment of orders that it had previously acknowledged. Angelo does not suggest that prepayment was required for any orders (which would have been contrary to the invoicing practice established by the record evidence), so to the extent it stopped shipping based on Brides' failure to adhere to a payment schedule, it did so in response to the nonpayment for *previous* orders. It does not claim nor has it proved any right to do so, and Brides alleges that the failure to ship confirmed orders was a breach that caused it substantial damages. And third, Brides' maintains that Angelo's wrongful termination of the contract left it with useless samples that Brides had been required to purchase. 2d Am. Compl. ¶ 18, ECF No. 59.

Because the parties' claim and counterclaim for breach of contract are not coextensive, Brides' liability on Angelo's contract claim does not preclude relief on its own contract claim. Even though Angelo established its right to payment for a certain set of orders, there are fact issues regarding whether Brides can prove that Angelo also breached the parties' contract by repudiating or terminating the commercial relationship or by failing to ship orders that had been confirmed and as to which payment was not yet due.

### 3. Declaratory Judgment

Finally, Angelo seeks judgment on Brides' request in Count III for a declaratory judgment regarding the amounts owed by the respective parties. Brides fails to argue that its declaratory judgment count adds anything to this case other than a second, gratuitous statement of the parties' respective liability. Declaratory relief is a matter of the court's discretion. 29 U.S.C. § 2201(a) (court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). A declaratory

judgment that adds nothing to the plaintiffs' claims for monetary damages for the same violations serves no purpose. *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 340 (N.D. Ill. 2002). That is why courts commonly decline to exercise their discretion when the "claim for declaratory judgment substantially overlaps with Plaintiff's substantive claims." *Cohn v. Guaranteed Rate Inc.*, No. 14 C 9369, 2015 WL 5307625, at *5 (N.D. Ill. Sept. 10, 2015); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014). Here, the same substantive issues are raised in the breach-of-contract and declaratory-judgment counts; once the merits of the contract claim and counterclaim are adjudicated, the substantive issues will be resolved, and there is nothing to be gained—and certainly nothing the plaintiff identifies—by entering duplicative relief. Damages are the more effective and appropriate remedy for breach of contract. Even so, there is also no reason for entering a merits judgment for Angelo on Brides' Count III; the Court simply will not exercise its discretion to order declaratory relief upon the resolution of all the substantive claims. *See City of Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975) ("While the availability of another remedy does not preclude declaratory relief, a court may properly decline to assume jurisdiction in a declaratory action when the other remedy would be more effective or appropriate.")

### D.    Appropriate Parties

Angelo brought its breach-of-contract claim against all the named plaintiffs: House of Brides, Inc., House of Brides World's Largest Online Wedding Store, Inc., HOB Holding Corporation, and HOB I Holding Corporation. However, in responding to the summary judgment motion, the plaintiffs denied all of Angelo's asserted facts as they applied to any entity save House of Brides Inc., and asserted: "Each of the Plaintiff entities are separately incorporated entities. Only HOB, Inc. ever submitted purchase orders or was charged for the invoices put at

issue by Alfredo [sic] Angelo, Inc. ('AA'). House of Brides World's Largest Online Wedding Store, Inc., HOB Holding Corporation, and HOB 1 Holding Corporation **never did business with AA**[9] nor were the invoices AA puts at issue ever billed to anyone other than HOB, Inc." Pl. Response Stmt. ¶¶ 6-9, ECF No. 82 at 2-4; Pl. Stmt. Add'l Facts ¶ 2, ECF No. 82 at 9-10 (emphasis added). In response to this admission, Angelo withdraws its motion as to all plaintiffs other than House of Brides, Inc. Reply Mem. 2 n.1, ECF No. 89. Therefore the judgment for Angelo will be against House of Brides, Inc., alone.

The plaintiffs' admission, however, has consequences for Brides' own claims, of which the breach-of-contract claim survives the motion for summary judgment. The entities other than House of Brides, Inc. had no contractual relationship with Angelo and the plaintiffs do not set forth any grounds upon which those entities have a stake in the claim for damages and are properly joined as plaintiffs. Before the case proceeds, Brides shall be required to establish that the entities other than House of Brides, Inc., are properly joined because they are required parties, *see* Fed. R. Civ. P. 19, or because the conditions for permissive joinder apply, *see* Fed. R. Civ. P 20(a)(1). If it cannot, the court will drop the other entities. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). In the event that the other plaintiffs are required and must be joined so that "complete relief" can be accorded, the Court will not hold Angelo to its withdrawal of its request for judgment against all the named plaintiffs.

---

[9] It should be noted that this statement directly contradicts several allegations in the Second Amended Complaint, such as: "Prior to September 2011, *Plaintiffs* had been doing business with AA for more than 40 years. *Plaintiffs* purchased and sold AA dresses and were authorized distributors for AA." SAC ¶ 12, ECF No. 59 at 2 (emphasis added).

\*    \*    \*

For the foregoing reasons, Angelo's motion is granted as to its nonpayment claim under the UCC (Counterclaim Count I) and Brides' breach-of-warranty claim (Complaint Count II), and denied in all other respects. Because Brides' breach-of-contract claim survives, no judgment for an amount certain will be entered for Angelo at this time. Angelo's remaining counterclaims, including for trademark infringement and unfair competition (Counterclaim Count VIII) and trade and product disparagement (Count IX) also remain to be adjudicated. There remains, then, an opportunity for a more amicable conclusion to the parties' relationship, if not a chance to "start anew." SEDAKA, n.1, *supra*.[10]

Date: February 19, 2016

John J. Tharp, Jr.
United States District Judge

---

[10] Given the tenor of their filings and the history of this case, however, it appears likely that these parties are "never, ever getting back together." TAYLOR SWIFT, WE ARE NEVER EVER GETTING BACK TOGETHER (BIG MACHINE RECORDS 2012).